**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| VENIA RAE DEJULIO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-18-458-BMJ |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Venia Rae Dejulio, seeks judicial review of the Social Security Administration's (SSA) denial of her application for disability insurance benefits (DIB). The parties have consented to the exercise of jurisdiction over this matter by a United States Magistrate Judge. *See* 28 U.S.C. § 636(c). The Commissioner has filed the Administrative Record (AR) [Doc. No. 11], and both parties have briefed their positions.[1] For the reasons set forth below, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

**I.     Procedural Background**

On August 19, 2014, an Administrative Law Judge (ALJ) issued an unfavorable decision finding Plaintiff not disabled and, therefore, not entitled to DIB. AR 144-56. The Appeals Council granted Plaintiff's request for review and, on April 8, 2016, vacated the ALJ's decision and remanded with specific instructions for further proceedings. AR 164-65. Subsequently, on March 17, 2017, the ALJ issued a second unfavorable decision finding Plaintiff not disabled. AR 17-29. The Appeals Council denied Plaintiff's request for review. AR 1-6. Accordingly, the ALJ's

---

[1] Citations to the parties' briefs reference the Court's ECF pagination.

second decision constitutes the Commissioner's final decision. *See Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Plaintiff timely commenced this action for judicial review.

## II. The ALJ's Decision

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (explaining process); *see also* 20 C.F.R. § 404.1520. Following this process, the ALJ first determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015, and had not engaged in substantial gainful activity since March 20, 2010, her alleged onset date. AR 20.

At step two, the ALJ determined Plaintiff suffers from the following severe impairments: degenerative disc disease status post fusion, chronic obstructive pulmonary disease, and history of fibromyalgia. AR 20-24. The ALJ also determined that Plaintiff has the nonsevere impairment of major depression. AR 22. At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. AR 24.

The ALJ next determined Plaintiff's residual functional capacity (RFC), concluding that Plaintiff can perform sedentary work with additional nonexertional limitations, but including no functional limitations attributable to Plaintiff's mental health impairments. *See* AR 24-25.

At step four, relying on a vocational expert's (VE) testimony, the ALJ determined Plaintiff is unable to perform any of her past relevant work. AR 27. Proceeding to the fifth step and relying on the VE's testimony, the ALJ found Plaintiff can perform other work existing in significant numbers in the national economy. AR 27-28. Specifically, the ALJ found Plaintiff can perform the requirements of representative jobs such as information clerk, address clerk, and product inspector. AR 28. Therefore, the ALJ concluded that Plaintiff is not disabled for purposes of the Social Security Act. AR 29.

**III.     Claims Presented for Judicial Review**

Plaintiff alleges the ALJ erred in: (1) failing to properly evaluate the medical opinions regarding Plaintiff's mental health and (2) failing to properly consider whether Plaintiff met the criteria for Listing 1.04A. Pl.'s Br. [Doc. No. 19] at 16-20, 20-23. The Court agrees with Plaintiff's first claim of error and finds that remand is warranted. Because Plaintiff's other assertion of error may be affected by the ALJ's treatment of the case on remand, the Court does not reach these arguments.

**IV.     Standard of Review**

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009); *see also Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (holding that the court only reviews an ALJ's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied" and in that review, "we neither reweigh the evidence nor substitute our judgment for that of the agency" (citations and internal quotation marks omitted)). Under such review, "common sense, not technical perfection, is [the Court's] guide." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

**V.     Analysis**

**A.     Evaluation of evidence regarding Plaintiff's mental health**

Plaintiff asserts that the ALJ did not properly consider various evidence regarding Plaintiff's mental health. The Court agrees.

When the Appeals Council remanded Plaintiff's case, it was with instruction to the ALJ to give "further consideration" in "assess[ing] the severity" of Plaintiff's mental health impairments. AR 164. To determine the severity of a claimant's mental impairments, the SSA follows a special

3

technique that is set forth in 20 C.F.R. § 404.1520a. Under the special technique, the SSA first determines whether the claimant has a medically determinable mental health impairment. 20 C.F.R. § 404.1520a(b)(1). The SSA next rates the degree of functional limitation caused by the impairment. 20 C.F.R. § 404.1520a(b)(2)-(c). The SSA then uses the degree of functional limitation to determine the severity of the impairment. 20 C.F.R. § 404.1520a(d). In making these determinations, an ALJ's written decision "must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)" and "must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section." 20 C.F.R. § 404.1520a(e)(4).

Though the ALJ purported to follow the special technique, *see* AR 23-24, upon review the Court finds multiple errors in both the underlying medical evidence of record and in the ALJ's consideration of that evidence. As such, the Court cannot be confident that substantial evidence supports the ALJ's conclusions regarding Plaintiff's mental health.

### 1. Dr. White

On October 2, 2010, Jerry D. White, Ph.D., completed a report after conducting a psychological examination of Plaintiff upon referral by the Oklahoma Department of Rehabilitative Services. In his report, Dr. White documented that Plaintiff was "exhibiting symptoms of a heightened level of generalized anxiety and frustration," that testing results "would support the presence of a generalized elevation in [Plaintiff's] anxiety and depression," and the summary indicated that "[Plaintiff] presents with a heightened level of anxiety and depression." AR 429-30. Additionally, regarding "Vocational Implications," Dr. White opined that Plaintiff's medical problems "are limiting her ability to function in independent gainful employment" and "her mood disturbance further lowers her ability to cope with stresses in occupational, educational,

and social settings and may be contributing to her medical complications." AR 430. As Plaintiff notes, in vacating the previous ALJ decision and remanding for further consideration, the Appeals Council specifically noted the Vocational Implication portion of Dr. White's opinion and instructed that "[a]ccordingly, further consideration is needed to assess the severity of [Plaintiff's] medically determinable impairments." Pl.'s Br. at 17; AR 164; *see also* AR 17. As Plaintiff correctly contends, however, in summarizing Dr. White's report, the ALJ failed to discuss this portion of Dr. White's opinion. Pl.'s Br. at 17; *see* AR 22. The ALJ also discussed only a heightened level of depression and testing anxiety, but failed to acknowledge Dr. White's repeated assessments of generalized anxiety. *Compare* AR 22, *with* AR 429-30.

Though "an ALJ is not required to discuss every piece of evidence," she must "discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996). And here, despite instructions from the Appeals Council, the ALJ failed to discuss this significantly probative evidence that she apparently rejected. This was error.

### 2. Dr. Maxwell

Beth A. Maxwell, Ph.D., testified as the psychological medical expert at the December 13, 2016, administrative hearing.[2] As noted by the ALJ, Dr. Maxwell "testified that her review of the record indicates that [Plaintiff's] anxiety appears to be the main problem and would exaggerate her physical issues." AR 22; *see also* AR 44. Dr. Maxwell also testified that Plaintiff's anxiety and depressive disorder were nonsevere. *See* AR 45. The ALJ gave "great weight" to Dr.

---

[2] The transcript of the hearing indicates that the medical expert was Dr. Lisa Alexton. AR 36, 37, 38, 41, 42, 47. However, because the ALJ's decision references the medical expert as Dr. Maxwell, the Court will do the same to mitigate confusion. *See* AR 18, 22.

Maxwell's testimony. AR 22. The Court finds the ALJ's reliance on such testimony problematic for several reasons.

### a) There may not have been a lack of mental health treatment

As an initial matter, the basis for Dr. Maxwell's determination of nonseverity was that Plaintiff had not recently received mental health treatment. AR 45 ("The fact that [she] hasn't gotten any treatment for them in the recent years indicates they're non-severe." "[I]t would be non-severe based on no treatment in recent years."). But it does not appear that Dr. Maxwell recognized the extent of Plaintiff's mental health treatment at Red Rock Behavioral Health Services ("Red Rock"). Medical records indicate that Plaintiff was treated at Red Rock from August 2011 through February 2013 and the Court's review finds records from at least 16 separate encounters at that facility. *See* AR 496-515, 519-26, 565-95, 618-28, 632-49 (Exs. 8F, 12F, 16F, 18F, 20F). Dr. Maxwell, however, stated that "it looks like [Plaintiff is] getting meds from somewhere, but I don't have the records that indicates she's still going to the Red Rock in 2011, 2012." AR 44. Further, Dr. Maxwell stated that Plaintiff has "only had really about six visits altogether for the mental health." AR 47.

Additionally, though at some point Plaintiff stopped receiving mental health treatment from Red Rock Behavioral Health Services, it appears that Plaintiff continued to receive at least some treatment for her mental health. For instance, medical records indicate that Plaintiff had a prescription for an anti-anxiety medication through June 17, 2015, and Plaintiff testified that, after she stopped going to Red Rock, her general doctor provided her medications. *See, e.g.,* AR 725, 778; AR 51. In relying on a perceived lack of medical records from Red Rock, Dr. Maxwell did not appear to consider that Plaintiff could have received mental health treatment from her general doctor. *See* AR 45 ("[I]f you look at the fact that she's not getting any treatment, I don't know where she's getting the meds more recently. But it would be non-severe based on no treatment in

recent years."). As such, Dr. Maxwell's assessment of Plaintiff's lack of mental health treatment does not comport with the evidence of record.

### b) Lack of treatment is not a valid basis for nonseverity

Next, even if Dr. Maxwell were correct in concluding that Plaintiff had not recently received mental health treatment, a lack of treatment is not a valid basis for determining nonseverity. *See Diel v. Berryhill*, CIV-15-1043-F, 2017 WL 933241, at *2-3 (W.D. Okla. Feb. 2, 2017) (R&R), adopted 2017 WL 934722 (W.D. Okla. Mar. 8, 2017) (reversing and remanding when ALJ relied on the type and amount of mental health treatment in determining severity of a mental impairment). "[W]hether a claimant receives treatment from a mental health specialist is not determinative of a severe impairment." *Id.* at n.4; *accord Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) ("[T]he regulations set out exactly how an ALJ is to determine severity, and consideration of the amount of *treatment* received by a claimant does not play a role in that determination."); *Fleetwood v. Barnhart*, 211 F. App'x 736, 739 (10th Cir. 2007) ("[W]e have found no case authority requiring [plaintiff] to obtain medical treatment from such a [mental health] specialist before an ALJ can find that she has a severe mental impairment.").

### c) Plaintiff's financial situation should have been considered

Third, neither Dr. Maxwell nor the ALJ demonstrate consideration of Plaintiff's testimony that she could not afford mental health treatment. As set forth in the hearing testimony, Dr. Maxwell did not believe that Plaintiff's financial situation affected her ability to receive mental health care:

> Q [by Plaintiff's attorney]: Dr. [Maxwell], I appreciate your testimony. In terms of the discontinuation of treatment, it sounds like -- I don't want to put words in your mouth, but it sounds like you were assuming that the claimant has made a conscious decision to discontinue psychological care. Is that the implication that you took from looking at the records?

7

A: I can't even draw any conclusions on that because I don't have any notes saying that she didn't want treatment anymore. . . . I'm not sure why she quit therapy. I'm not sure why she doesn't take her meds sometimes.

\*\*\*

Q: If the care was discontinued secondary to financial requirements at Red Rock, would that change your opinion at all in terms of severity on an ongoing basis?

A: Not really because I think it wasn't really an issue. She worries about bills, but apparently her husband is working or had been working. I don't know if he still is. That wasn't a concern as far as financial. So, I don't really have the information to answer that question. I don't know why. There's nothing saying that she ran out of money in the file or that she didn't qualify. Even if she did qualify, she could go somewhere else to a free clinic.

AR 47-48. Plaintiff, however, testified that she had to stop going to Red Rock because she failed to meet its financial criteria for treatment. AR 49. She also testified that she was unable to obtain mental health treatment elsewhere and that she obtained medications from her general doctor. AR 50-51.[3] Moreover, the record contains numerous references to Plaintiff's inability to afford medication and treatment. *See, e.g.,* AR 365, 597, 699, 716-17.

The ALJ gave great weight to Dr. Maxwell's testimony. AR 22. The ALJ also stated that Plaintiff "did not receive any mental health treatment during" 2014 and 2015 which, as set forth above, may not accurate. *See* AR 23. And in her decision, the ALJ makes five separate mentions of Plaintiff's inability to afford medication or treatment. *See* AR 21, 23, 24, 26. But none of those references is in the context of considering whether Plaintiff's inability to pay provided a justification for any failure to seek mental health treatment. *See* AR 22-23. A claimant's inability to pay for treatment can constitute an acceptable justification for failing to seek treatment,

---

[3] Plaintiff testified that she could not obtain mental health care elsewhere because she could not "get to them," explaining that her family had gone from having two cars to having one, she does not drive far from her home because of difficulty seeing to the side, and she rarely leaves the house unless she can "stay very close . . . to the house," such as visiting her general doctor who is two blocks from her home. AR 50-51.

8

however, and the ALJ is ordinarily required to address such financial considerations before drawing adverse inferences from any such failure. *See Threet v. Barnhart*, 353 F.3d 1185, 1190-91 n.7 (10th Cir. 2003) ("[I]nability to pay may provide a justification for a claimant's failure to seek treatment."); SSR 16-3p, 2017 WL 5180304, at *9-10 (Oct. 25, 2017) ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. . . . When we consider the individual's treatment history, we may consider . . . [that the] individual may not be able to afford treatment and may not have access to free or low-cost medical services."). The ALJ erred in failing to consider Plaintiff's ability to pay for mental health treatment.

### d) Functional limitations determine severity, severity does not determine functional limitations

Under the special technique used to determine the severity of a claimant's mental impairments, the SSA bases the severity of the impairment on the degree of functional limitation caused by the impairment. 20 C.F.R. § 404.1520a(d). Here, however, Dr. Maxwell reversed the technique and used the *severity* to determine the *degree of functional limitation*:

> Q [by ALJ]: The diagnoses that you find of the general anxiety and the depressive disorder, are those established in this record as severe medical conditions?
>
> A [by Dr. Maxwell]: . . . [I]t would be non-severe based on no treatment in recent years.
>
> Q: If, on the other hand because as you mentioned it kind of seems to be balancing, *if those were considered severe*, are there -- you mentioned that it's at a moderate level, would that mean that the B-criteria,[4] each one of those is at a moderate level or no?

---

[4] The limitations identified in the "paragraph B" criteria are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. AR 24.

9

> A: I would say her social anxiety -- her anxiety is at a moderate level which would be under the social part of current evaluation.
>
> Q: What about activities of daily living? Where would that fall?
>
> A: Mild.
>
> Q: Concentration?
>
> A: I'd probably place her at moderate for that.
>
> \*\*\*
>
> Q: Again, *if we follow along the line of these being severe medical conditions*, what residual functional capacity would be established?
>
> A: It looks like she could only do simple work and I would definitely limit her contact with the public, as well as her coworkers because she tends to be socially isolated. So, those two things I would limit. I don't see a problem with supervisors, but with sort of being a team player in a work situation, I don't think she would function very well or with the general public because of her anxiety.
>
> Q: *That again would assume that we have severe medical conditions*?
>
> A: Right.

AR 44-46 (emphasis added). The ALJ appears to have adopted this reasoning, which is error. *See* AR 22 ("[T]he medical expert stated that as the claimant has not had treatment since 2012, her mental impairment is not severe."), 28 (acknowledging that the RFC would have included additional restrictions had Plaintiff's mental impairments been considered severe).

### 3. State agency psychologists

In addition to the major depression identified by the ALJ as a medically determinable impairment, the ALJ noted that both Dr. Maxwell and Dr. White highlighted Plaintiff's anxiety as a mental impairment. *See* AR 22 (ALJ noting that "Dr. Maxwell testified that her review of the record indicates that anxiety appears to be the main problem and would exaggerate her physical issues" and that "Dr. White noted a heightened level of depression and testing anxiety."); *see also* AR 44, 427-30. And, as set forth above, Dr. White mentioned not just Plaintiff's "testing anxiety,"

but documented that she was "exhibiting symptoms of a heightened level of generalized anxiety and frustration," that testing results "would support the presence of a generalized elevation in [Plaintiff's] anxiety and depression," and the summary indicated that "[Plaintiff] presents with a heightened level of anxiety and depression." AR 429-30. Additionally, the ALJ noted that Plaintiff was seen at Red Rock for anxiety and received treatment including antianxiety medications. AR 23; *see also, e.g.,* AR 500, 580, 640 (Plaintiff's diagnoses at Red Rock consistently including anxiety).

As such, the medical evidence established that Plaintiff exhibited, was diagnosed with, and was treated for anxiety, which the ALJ acknowledged. However, neither of the two state agency psychologists appear to have considered the effects of Plaintiff's anxiety. On initial consideration, the state agency psychologist reviewed affective disorders and found that Plaintiff had the medically determinable impairment of depression, but there is no evidence that he reviewed anxiety-related disorders. *See* AR 477 (completed form for affective disorders), 479 (blank form for anxiety-related disorders), 486 (summary of medical evidence reviewed and reference to Dr. White's mention of "testing anxiety" but not Dr. White's assessment of generalized anxiety).

On reconsideration, a second state agency psychologist reviewed Plaintiff's first three Red Rock records and noted Plaintiff's history of anxiety, panic attacks, diagnoses of generalized anxiety disorder and panic attacks, and Red Rock's assessment that Plaintiff is "unable to adjust to community or peer situations." AR 516; *see also* AR 496-515. Without analysis or explanation, however, the psychologist "affirmed as written" the initial psychiatric review. AR 516.

The ALJ gave "great weight" to these opinions. AR 22. Because they did not address anxiety, however, and because the ALJ did not specifically address anxiety outside of her reliance on these opinions, it is unclear that they can provide substantial evidence for the ALJ's conclusion

11

that anxiety did not cause any functional limitations. *See* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."); *see also Clifton*, 79 F.3d at 1009-10 (holding that an ALJ must discuss "significantly probative evidence" that she rejects).

### 4. Conclusion

Because of the various errors in the underlying medical opinions and the ALJ's reliance upon them, the Court cannot confidently say that substantial evidence supports the ALJ's determination that Plaintiff's mental health does not more severely impact her ability to work. Further, the Court cannot confidently say that the ALJ adequately followed the instructions of the Appeals Court on remand to "[g]ive further consideration to the treating and nontreating source opinions," "[f]urther evaluate [Plaintiff's] mental impairment," and "[g]ive further consideration to [Plaintiff's] maximum [RFC]."[5]

### B. Plaintiff's Remaining Points of Error

The Court does not address Plaintiff's other allegation as it "may be affected by the ALJ's treatment of the case on remand." *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## VI. Conclusion

For the reasons set forth, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

---

[5] An ALJ's failure to follow instructions from the Appeals Council is error that requires reversal. *See Hale v. Astrue*, No. CIV-10-1377-L, 2012 WL 3542201, at *2-3, *7 (W.D. Okla. July 24, 2012) (finding that the ALJ erred by, among other things, "failing to comply with instructions by the Appeals Council" and that the error "require[d] reversal") (R&R), adopted, 2012 WL 3542198 (W.D. Okla. Aug. 16, 2012); *accord David T. v. Berryhill*, No. 2:17-CV-01255-EJF, 2019 WL 974223, at *3 (D. Utah Feb. 28, 2019); *Paice v. Acting Comm'r of Soc. Sec.*, No. 1:16-CV-00042-EJF, 2017 WL 4325794, at *4 (D. Utah Sept. 27, 2017). *See also* 20 C.F.R. § 404.977(b) ("The administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order.").

ENTERED this 13th day of March, 2019.

                                                                                       BERNARD M. JONES
                                                                                       UNITED STATES MAGISTRATE JUDGE